[Crim. No. 4000. First Dist., Div. One. Nov. 16, 1961.]

In re JAMES EDWARD KLEIN on Habeas Corpus.

James Edward Klein, in pro. per., for Petitioner.

Stanley Mosk, Attorney General, Arlo E. Smith and Derald E. Granberg, Deputy Attorneys General, for Respondent.

TOBRINER, J.—After petitioner had been committed to prison upon suspension of parole for another offense, the court here revoked the probation it had previously granted as to the offense which was submitted to it, rendered judgment and imposed sentence pursuant to section 1203.2a of the Penal Code in the absence of petitioner and without his representation by counsel. While we have found no decision which passes upon the issue, we do not believe the section applicable unless petitioner waives the rights of appearance and representation. The opportunity to be heard and to be represented by counsel at the crucial point of conviction are basic rights which, inherited from the common law, are cornerstones of due process. Waiver of such rights cannot be lightly constructed: it can be granted only knowingly and intelligently; we do not find such waiver here.

We set out categorically petitioner's record of conviction and probation, grant and suspension of parole:

1. On or about November 13, 1952, petitioner was committed to the California State Prison at San Quentin from Los Angeles County pursuant to a conviction by a jury upon two counts of forgery, and upon his plea of guilty to one count of receiving stolen property.

2. In August of 1954, the petitioner was released on parole.

3. On September 28, 1955, his parole was suspended and he was ordered returned to prison.

4. On March 20, 1956, he was again released on parole as of May 2, 1956.

5. In March of 1957, the petitioner was arraigned in Los Angeles County on a charge of petty theft with a prior felony conviction. (Pen. Code, § 667.) He entered a plea of guilty. The court, without imposition of judgment, granted probation for a period of three years on June 19, 1957. Counsel represented petitioner during these proceedings.

6. On March 28, 1957, between appellant's arraignment and the grant of probation, appellant's earlier parole was suspended and he was ordered returned to prison.

7. On August 2, 1957, petitioner was again released on parole.

8. On December 26, 1957, the Division of Adult Paroles suspended petitioner's parole and ordered that he be returned to the penitentiary.

9. In February 1958, pursuant to the provisions of section 1203.2a of the Penal Code, the court without notice to petitioner, without his presence, and without his being represented by counsel, revoked the earlier grant of probation of March 1957, and sentenced petitioner to the state penitentiary, the sentence to run concurrently with the sentence he was then serving upon the conviction of November 13, 1952.

10. Petitioner did not receive notice of the revocation of probation and the pronouncement of judgment against him until February 27, 1958, an elapse of a period of 14 days.

The record shows that when the court revoked probation and imposed sentence in petitioner's absence, in February 1958, he was incarcerated in the state prison for another offense, having been imprisoned as a parole violator subsequent to the grant of probation. Prior to the offense for which he had been granted probation in March 1957, he had been first tried, convicted and sentenced in November 1952, then granted parole, and finally, after a series of parole grants and subsequent violations, again returned to the state prison.

Petitioner on habeas corpus raises two issues, which we shall discuss separately: first, whether section 1203.2a of the Penal Code applies only in the event the imprisonment after the grant of probation results from a *conviction* and *sentence* rendered subsequent to such grant of probation and not if such imprisonment results from *revocation of parole*; second, whether the application of the section, in the imposition of sentence in his absence, without a showing that petitioner understandingly had waived his right to be present and to be represented by counsel at that time, deprived him of his constitutional rights.

Turning to the first point, we believe that section 1203.2a applies since petitioner's return to prison for violation of his parole constituted a commitment "to a prison . . . for another offense" within the meaning of the statute. Both the literal interpretation of the word "commitment" as well as the purpose of the Legislature show the pertinence of the section.

Section 1203.2a of the Penal Code reads in part: "If any defendant who has been released on probation is *committed* to a prison in this State for *another* offense, the court which released him on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he was granted probation, in the absence of the defendant." (Emphasis added.)

In the first place, the prisoner was "committed to a prison" upon his violation of parole. Webster's New International Dictionary (2d ed., 1943) defines the word "commit" as follows: "To put in charge of a jailer; to imprison." *People* v. *Scherbing* (1949) 93 Cal.App.2d 736 [209 P.2d 796] makes the point that the "Legislature has not used the word 'commitment' to refer solely to judicial action." (P. 739.) While the court refers to section 5077 of the Penal Code, which was later amended (Stats. 1953, ch. 1666, p. 3396), the general language of the opinion still holds: "A 'commitment,' in the legal sense, may be issued, lawfully, by other than a judicial body. . . . Section 1767 of the Welfare and Institutions Code provides that the power of the Youth Authority to make orders 'committing to an institution' any person under the control of the Authority may not be delegated. These sections demonstrate that the Legislature has not used the word 'commitment' to refer solely to judicial action." (P. 739.) Following this decision the court in *People* v. *Rick* (1952) 112 Cal.App.2d 410 [246 P.2d 691] said: "A commitment is

an order by a court or other authorized agency [citation] sending a person to prison or other place of detention. It is the process and authority for carrying the judgment and sentence into effect.'' (P. 413.)

In the second place, the construction of section 1203.2a itself indicates that it is not limited to those cases in which the prisoner's return to the penitentiary results from a subsequent conviction. Commitment for another offense within the context of section 1203.2a is broad enough to include commitments both for an offense committed prior to, as well as subsequent to, the offense which engendered probation. That the words ''another offense'' are not limited only to *subsequent* offenses becomes clear from paragraph four of the same section. The Legislature there provides specifically as to the commencement of the term of imprisonment for those defendants guilty of a subsequent offense. Thus treatment of *subsequent offenses* is differentiated from treatment of offenses in general; such subsequent offenses are excepted for special handling from the whole category of offenses. The whole category covers all offenses, including prior offenses.

▮ We conclude that although petitioner had been imprisoned because of parole violation rather than a conviction subsequent to the original judgment, the parole violation produced a ''commitment.'' There is no distinction between a commitment for parole violation and a commitment after judgment either in the sense of the word commitment or in the legislative purpose expressed in the section.

▮ The second issue turns upon whether the court in applying the section could properly impose sentence upon petitioner in his absence and without counsel in a case in which he had not waived those rights. We shall point out why we have concluded that rendition of judgment under such circumstances violated petitioner's constitutional rights.

At the threshold we must distinguish between a case in which the court has properly pronounced judgment but suspended execution during probation and a case in which the court has not rendered judgment but granted probation and, after the revocation of probation, pronounced judgment. The courts have uniformly held that in the first instance no constitutional rights apply to the revocation of probation. ▮ A probation proceeding is not a prosecution; the convicted person can claim no right to probation; he is accorded probation as a privilege. (*In re Levi* (1952) 39 Cal.2d 41, 44 [244 P.2d

403]; *In re Davis* (1951) 37 Cal.2d 872, 873 [236 P.2d 579]; *People* v. *Fields* (1948) 88 Cal.App.2d 30, 33 [198 P.2d 104].)

 The rendition of judgment and the imposition of sentence take place in an entirely different legal setting than the grant of probation. Basic constitutional protections attach to the judicial act that deprives the defendant of status, liberty and sometimes property. Constitutional and statutory safeguards surround so grave a pronouncement. At this point in the proceedings the defendant must be afforded the opportunity to appear and to defend through counsel. As we shall point out, one of the heritages of Anglo-Saxon common law, which expresses itself in constitution and statute, is this basic right of the defendant, at the time of sentencing, to appear and defend in person with counsel.

Article I, section 13, of the California Constitution provides that "[i]n criminal prosecutions . . . the party accused shall have the right . . . to appear and defend, in person and with counsel." Section 1193 of the Penal Code declares that "If the conviction be for a felony, the defendant must be personally present when judgment is pronounced against him" unless his presence cannot be procured after the exercise of reasonable diligence or defendant has absconded.[1] Penal Code section 1043 provides that "[t]he defendant must be personally present at the trial" and imposes special provisions for the defendant who, in a felony case, fails to appear at any time during the course of trial. Penal Code section 686 states that "[i]n a criminal action the defendant is entitled . . . [t]o be allowed counsel . . . or to appear and defend in person and with counsel." As to arraignment of defendant for judgment, Penal Code section 1200 specifies: "When the defendant appears for judgment he must be informed by the court, or by the clerk, under its direction, of the nature of the charge against him and of his plea, and the

---

[1]See *People* v. *Brown* (1951) 102 Cal.App.2d 60 [226-P.2d 609]. Defendant may, however, be deprived of the right after the trial has begun if the defendant voluntarily absents himself. (*People* v. *Rogers* (1957) 150 Cal.App.2d 403, 414 [309 P.2d 949].) If proceedings taken in defendant's absence do not prejudice him the error is not material. (*People* v. *Isby* (1947) 30 Cal.2d 879 [186 P.2d 405]; *People* v. *Teitelbaum* (1958) 163 Cal.App.2d 184, 207 [329 P.2d 157].) With these exceptions a judgment in a felony case may be pronounced only in the presence of the accused; if pronounced in his absence it must be set aside. (*In re Levi* (1952) 39 Cal.2d 41, 45 [244 P.2d 403]; 23 C.J.S. § 973.) The rule is familiar and fundamental that the prisoner, in case of a felony, must be present during the whole of his trial. (*In re Dennis* (1959) 51 Cal.2d 666, 671-672 [335 P.2d 657].)

64

verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him.''

Article I, section 13, of the Constitution was applied in *People* v. *Fields, supra,* 88 Cal.App.2d 30, to a situation in which the court granted probation without imposing sentence, thereafter revoked probation and imposed sentence in the absence of defendant's counsel. The court states: ''Inasmuch as the arraignment for judgment and pronouncing of judgment are clearly a phase of 'criminal prosecutions,' the defendant herein was denied that constitutional right. . . . In the within action judgment was pronounced without arraignment for judgment and in the absence of defendant's counsel which was error.'' (P. 33.) Although this case involved appeal rather than habeas corpus the principle applies here.

The right to be present when sentence is pronounced derives from the common law. (*Schwab* v. *Berggren* (1891) 143 U.S. 442, 446-448 [12 S.Ct. 525, 36 L.Ed. 218].) The common law, distinguishing the situation as to a misdemeanor which imposed a fine only,[2] required the presence of defendant upon pronouncement of sentence if the slightest degree of corporeal punishment were to be inflicted. The rule apparently rested upon the bases that the defendant be identified by the court as the real party adjudged guilty, that he be afforded an opportunity to plead a pardon or move in arrest of judgment, and finally that he be offered the occasion to state why judgment should not be given against him. Further, it was thought that the example of the open denunciation of punishment in defendant's presence before the court would

[2]The common law did not require the presence of the defendant in a case in which sentence was pronounced imposing a fine for a misdemeanor; the common law possessed other means than imprisonment for collection of the fine. Today apparently in some jurisdictions the courts hold that even if defendant is imprisoned for failure to pay the fine, the court may render sentence in his absence, the theory being that imprisonment serves as a means to collect the fine and not as incident to punishment. (15 Am.Jur. § 455, p. 113.) Following the provision in Penal Code section 1043 that if a defendant upon a misdemeanor charge absents himself with full knowledge that a trial is to be or is being conducted, the trial may proceed in his absence, this court, in *In re Baird* (1957) 150 Cal.App.2d 561 [310 P.2d 454, 68 A.L.R.2d 628] held that in a misdemeanor case defendant could be tried in his voluntary absence even though the failure to pay the fine would result in imprisonment. Defendant was, however, present for sentencing. The court points out that ''[w]hile it is true that at common law an absconding misdemeanant could not be tried in his absence unless the misdemeanor was punishable solely by fine, we find no such limitation in this state.'' (P. 571.)

tend to deter others from the commission of similar offenses. (*Ball* v. *United States* (1890) 140 U.S. 118, 131 [11 S.Ct. 761, 35 L.Ed. 377] ; 15 Am.Jur., § 455, pp. 113-114.)

In the instant case, the deprivation of the right to be present and the right to counsel worked substantial detriment to petitioner. As Justice Traynor stated in *In re Levi, supra,* 39 Cal.2d 41, a defendant "may be able to show good cause why the judgment should not be pronounced against him. [Citations.] He may be able to show that there is good cause to believe that he is insane [citations], or that there is good cause to order a new trial [citations], or that there is good cause to grant a motion in arrest of judgment. [Citations.] If judgment is pronounced in his absence, he is deprived of these rights." (P. 45; footnote omitted.)

Petitioner suffered a more finite disadvantage here. Violation of section 667 of the Penal Code carries punishment either as a felony or as a misdemeanor; petitioner or his attorney could have offered evidence in mitigation of punishment pursuant to section 1204 of the Penal Code. (See *In re Miller* (1959) 176 Cal.App.2d 75, 78 [1 Cal.Rptr. 62].) Moreover, as is pointed out in *In re Levi, supra,* 39 Cal.2d 41, the absence of defendant's counsel creates the "danger that the defendant might allow the time for notice of appeal to run in ignorance of his rights, and thus lose his opportunity to obtain review of the judgment." (P. 46.) Petitioner complains that this very danger matured here and that he did not know of the judgment in sufficient time to file an appeal.

Indeed the Attorney General concedes that it "seems beyond argument" that "there is a constitutional right to appear in person and with counsel in a proceeding to revoke probation granted without imposition of sentence and to pronounce judgment. . . ." Respondent's sole contention is that petitioner, in accepting probation, impliedly acquiesced in the sanction of section 1203.2a that sentence could be imposed in his absence; that thereby petitioner waived his constitutional rights.

█ Can a party be held to have waived his fundamental rights by taking a benefit granted by one statute if another related statute forfeits those rights? The court did not inform petitioner that his acceptance of probation constituted a waiver of his right of presence or representation upon sentencing. The court did not so much as ascertain if petitioner knew of the statute which removed these rights. Are

these rights thus subject to silent and ignorant relinquishment?

The acceptance of probation should not work such automatic waiver in the absence of the court's record of petitioner's "knowledgeable waiver of those rights. . . ." (*In re Turrieta* (1960) 54 Cal.2d 816, 819 [8 Cal.Rptr. 737, 356 P.2d 681].) Three recent Supreme Court cases consistently hold that the right to counsel at the rendition of judgment, after revocation of probation, can only be "understandingly" (*idem.*) waived. Thus in the most recent, the *Turrieta*, case, the court through Justice White said, "There are good reasons why a defendant should be advised of his right of counsel and either then freely and understandingly waive that right or be represented by counsel when sentence is pronounced." (P. 819.) Justice Traynor wrote in *In re Levi, supra,* 39 Cal. 2d 41, "The trial court did not inform petitioner that he had a right to counsel. It did not ask him if he had any legal cause to show why judgment should not be pronounced against him. It made no attempt to ascertain if he understood the pleas and defenses available under section 1201 of the Penal Code." (Pp. 46-47.) Chief Justice Gibson stated in *In re Roberts* (1953) 40 Cal.2d 745 [255 P.2d 782] : "There is nothing in the record to indicate that Roberts was ever informed of his right to counsel or that he knew he was entitled to the aid of an attorney. There was no express waiver of the right, and we are of the opinion that none may be implied." (P. 748.)

While these cases passed upon the right to be represented by counsel, they surely apply to the twin right to be present personally at rendition of judgment. If we may paraphrase in reverse Justice Traynor's language in *In re Levi, supra,* 39 Cal.2d 41, 46, we believe it would be anomalous to hold that the defendant's right of representation by counsel is so important that he may set aside the judgment on collateral attack and yet to hold that the constitutional right to be present is not of equal importance. Upon a parity of reasoning we believe that if waiver applies to the right of representation by counsel it must apply to the right of presence of the defendant; we do not see how waiver can attach to one right and not to the other. To urge that the right of presence is greater than that of representation, and therefore should be less easily waived, is to assume a difference in these rights. We know of no judicial scale in which to weigh the relative value of these two comparable rights of due process.

Respondent's attempted distinction of the three decisions cited *supra* and its submitted contrary authorities do not refute the above analysis. Respondent would distinguish the cases upon the ground that they do not deal directly with section 1203.2a of the Penal Code. While the rights we describe here obviously do not originate in the section, they control it.

Respondent's cases, *People* v. *Banks* (1959) 53 Cal.2d 370 [1 Cal.Rptr. 669, 348 P.2d 102], and *In re Baird* (1957) 150 Cal.App.2d 561 [310 P.2d 454, 68 A.L.R.2d 628], do not affect the rulings. It is true that the court in the *Banks* case stated that a defendant, like petitioner, whose guilt had been established but who had not been sent to prison "is subject to no disabilities whatsoever except those specifically declared by some other provision of law or affirmatively prescribed by the court as terms or conditions of probation." (P. 386.) Respondent argues from the reference to other provisions of law that the court incorporates the limitations of section 1203.2a. We have pointed out, however, that "other provisions of law" embrace many statutes and constitutional protections. Our analysis indicates that the rights preserved in statutes and Constitution prevail over section 1203.2a as applied in the instant circumstances. As to *In re Baird,* we have explained (see fn. 2) that the case involved a misdemeanor and that in any event defendant there appeared personally at the time of sentencing.

The issue here really crystallizes into the problem of how far the rights of due process should be preserved in relation to proceedings terminating probation and rendering judgment. The purpose of probation is to rehabilitate the prisoner; it is granted as a matter of grace. Obviously the prisoner does not enjoy the protection of due process in the revocation of probation itself or as to restrictions reasonably related to it.[3]

We deal here, however, in a case which both involves proceedings after the termination of probation and the preservation of fundamental constitutional rights. Whatever the legal disabilities of the prisoner during probation, such disabilities

---

[3]Indeed, the impact of due process protections upon such rehabilitatory processes as probation, juvenile court proceedings, commitments for the mentally ill, and like matters, has engendered grave concern and widespread discussion. See Margolin, *Right to Counsel and Compulsion to Testify,* 7 Howard L.J. 1 (1961); Breitenbach, *Due Process of Law for Youthful Offenders,* 32 State Bar J., 665 (1957); S. Kadish, *A Case Study of the Signification of Procedural Due Process: Institutionalization of Mentally Ill,* 9 W.Polit.Q. 93 (1956).

must terminate with the revocation of probation; at least when the probation ends, the due process protection should take hold. Moreover, in the instant case, the denial of due process did not involve minor matters but deep-rooted rights of presence and representation by counsel at the date of rendition of sentence. Petitioner suffered a loss of due process at the very time when the court should have afforded him that protection.

The record fails to demonstrate a knowledgeable waiver by defendant of basic constitutional rights.[4] The court in granting probation did not determine or record that petitioner at that or any other time knowingly or upon information waived the right to be present or to be represented by counsel at a later rendition of judgment in the event that he suffered imprisonment for another offense. In the absence of such showing we believe that the court in pronouncing judgment against petitioner in his absence and without representation by counsel denied to him protections fundamental to the concept of due process.

The petitioner is discharged from the custody of the authorities at San Quentin Prison and committed to the custody of the Sheriff of Los Angeles County with directions that he be arraigned for pronouncement of judgment in accordance with this opinion.

Bray, P. J., and Sullivan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 9, 1962.

---

[4] A commentator has pointed out that the opportunity of the informed prisoner to reject the conditions imposed upon probation is academic and that acceptance of probation should not in any event be held to constitute an agreement to waive constitutional rights. Thus the note "Legal Aspects of Probation Revocation" (59 Colum.L.Rev. 311 (1959)), states: "By accepting conditional liberty the . . . [defendant] is said to have agreed to procedures authorized by the probation statute or specified in the probation order. As a practical matter, however, a person faced with no alternative but imprisonment is likely to accept whatever conditions are imposed, and analogies to contract therefore seem inappropriate. Moreover, an agreement made under these coercive circumstances may not be effective to waive constitutional rights." (P. 324; footnotes omitted.)