David Lewis RICE, Petitioner–Appellee,

v.

Tana WOOD, Superintendent, Respondent–Appellant.

David Lewis RICE, Petitioner–Appellant,

v.

Tana WOOD, Superintendent, Respondent–Appellee.

Nos. 93–99011, 93–99012.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 29, 1995.

Decided Feb. 20, 1996.

Robert S. Mahler, MacDonald, Hoague & Bayless, Seattle, Washington; Peter Offenbecher and Thomas Hillier, Office of Federal Public Defender, Seattle, Washington; and Montell E. Hester and Wayne Fricke, Tacoma, Washington, for petitioner-appellee/cross-appellant David Lewis Rice.

Thomas J. Young, Christine O'Grady Gregoire, and Paul D. Weisser, Office of Attorney General, Olympia, Washington, for respondent-appellant/cross-appellee Tana Wood.

Before: WALLACE, Chief Judge, JAMES R. BROWNING, SCHROEDER, FLETCHER, D.W. NELSON, CYNTHIA HOLCOMB HALL, KOZINSKI, DAVID R. THOMPSON, TROTT, T.G. NELSON and HAWKINS, Circuit Judges.

Opinion by Judge KOZINSKI; Concurrence by Judge HAWKINS; Dissent by Judge D.W. NELSON.

KOZINSKI, Circuit Judge.

David Lewis Rice was absent from the courtroom when the jury returned from its deliberations and sentenced him to death. After an unsuccessful direct appeal and personal restraint petition, *see State v. Rice,* 110 Wash.2d 577, 757 P.2d 889 (1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989) (*Rice I*), Rice sought a writ of habeas corpus in the federal district court for the Western District of Washington. The district court stayed the habeas proceedings so Rice could bring a second personal restraint petition. After the Washington Supreme Court dismissed that petition, *see In re Rice,* 118 Wash.2d 876, 828 P.2d 1086 *cert. denied,* 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992) (*Rice II*), the district judge granted Rice's petition and set aside the sentence, holding that Rice

could not and did not validly waive his right to be present. A panel of this court affirmed, concluding that Rice had a constitutional right to be present when the jury rendered his sentence; that he had not waived this right; and that the error was structural and, therefore, not subject to harmless-error analysis. *See Rice v. Wood,* 44 F.3d 1396, 1400–02 (9th Cir.1995) (*Rice III* ). We ordered the case reheard en banc to examine the issues concerning Rice's absence.

## I

The sad facts of this case have been set out in full elsewhere. *See Rice I,* 757 P.2d at 891–900; *Rice II,* 828 P.2d at 1089–91; *Rice III,* 44 F.3d at 1398–99. We summarize them briefly.

On Christmas Eve 1985, Charles and Annie Goldmark were at home preparing for a holiday dinner when petitioner came to their door posing as a taxicab driver delivering a package. Brandishing a toy gun, he forced his way into their home and used chloroform to render the couple and their two young boys unconscious. He then bludgeoned them with a steam iron and stabbed them with a knife. The Goldmarks were found by guests who arrived at their home a short time later. Annie was pronounced dead on the spot and Charles and the boys all died within five weeks.

Rice was eventually arrested and charged with four counts of aggravated first degree murder. His trial was bifurcated into separate guilt and sentencing phases, with the same jury sitting in both. At the completion of the guilt phase, the jury convicted Rice on all four counts. They then heard evidence pertaining to sentencing and retired to deliberate. Shortly before the jurors informed the bailiff that they had reached a decision, the judge learned that Rice had been taken to the hospital because he had ingested a nicotine drink brewed from cigarettes. The medical staff later informed the judge that Rice was unresponsive to communication and would have to have his stomach pumped.

The judge then asked the attorneys whether they believed Rice's presence was necessary. Defense counsel stated that he didn't think so and purported to waive Rice's right to be present; the prosecutor didn't object. The judge then proceeded to receive the sentence and poll the jury in Rice's absence. The jury found no mitigating circumstances that would merit leniency; no juror disagreed with the announced decision when polled. Pursuant to Wash.Rev.Code § 10.95.030, the court sentenced Rice to death.[1]

## II

Whether or not Rice's absence from the courtroom when the jury announced his sentence amounts to constitutional error is not before us. As in *Rushen v. Spain,* 464 U.S. 114, 117 n. 2, 104 S.Ct. 453, 455 n. 2, 78 L.Ed.2d 267 (1983), the state has "conceded ... that [the petitioner's absence] established federal constitutional error.... [W]e assume, without deciding, that [petitioner's] constitutional right[ ] to presence ... [was] implicated in the circumstances of this case."[2] We also agree, for the reasons stat-

---

1. While it was the judge who pronounced sentence, he had no discretion under Washington law. Once the jury found insufficient mitigating circumstances to recommend leniency, the death sentence was mandatory. *See* Wash.Rev.Code § 10.95.030(2) ("If ... the trier of fact finds that there are not sufficient mitigating circumstances to merit leniency, the sentence shall be death.").

2. The concession is surprising, as this is an open question. The Supreme Court has stated that a defendant "has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' " *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (quoting *Sny-*

*der v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). However, that is not true " 'when presence would be useless, or the benefit but a shadow.' " *Id.* (quoting *Snyder,* 291 U.S. at 106–07, 54 S.Ct. at 332). The Court has held there is no constitutional right to be present in proceedings where the defendant could have done more to help his cause than in this case. *See Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667 (no right to be present during hearing to determine competency of prosecution's key witnesses); *United States v. Gagnon,* 470 U.S. 522, 526–27, 105 S.Ct. 1482, 1484–85, 84 L.Ed.2d 486 (1985) (per curiam) (no right to be present during in camera examination of juror who complained of being intimidated by

ed by the panel, that the district court did not err in finding that Rice did not validly waive his right to be present. *See Rice III,* 44 F.3d at 1400–01. The only issue remaining is whether Rice's absence when the jury declared his sentence amounted to structural or trial error.[3]

█ The Supreme Court has said very clearly that structural errors "are the exception and not the rule." *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). "Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Id.* at 579, 106 S.Ct. at 3106. True to its word, the Court has been highly parsimonious in adding to the list of rights which, if violated, amount to structural error. The examples in *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991), the leading case on the subject, are few and concern some of the most important protections of our criminal justice system: *Tumey v. Ohio,* 273 U.S. 510, 511, 47 S.Ct. 437, 438, 71 L.Ed. 749 (1927) (denial of right to impartial judge); *Gideon v. Wainwright,* 372 U.S. 335, 342, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963) (denial of right to counsel); *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984) (denial of right to represent oneself); *Waller v. Georgia,* 467 U.S. 39, 49 & n. 9, 104 S.Ct. 2210, 2217 & n. 9, 81 L.Ed.2d 31 (1984) (denial of right to public trial); *Vasquez v. Hillery,* 474 U.S. 254, 260, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986) (unlawful exclusion of members of defendant's race from grand jury). As telling as the short list of defects that are structural is the much longer list the Court has held to be

mere trial errors. *See, e.g., Fulminante,* 499 U.S. at 306–07, 111 S.Ct. at 1262–64 (listing trial errors).

The Supreme Court has explained that trial errors are those "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. at 1264. Structural errors, on the other hand, are defects that permeate "[t]he entire conduct of the trial from beginning to end," *id.* at 309, 111 S.Ct. at 1265, or that "affect[ ] the framework within which the trial proceeds, rather than simply an error in the trial process itself," *id.* at 310, 111 S.Ct. at 1265.

Rice's absence when the jury announced his sentence simply does not fall within the narrow category of structural errors. Had he been present, he couldn't have pleaded with the jury or spoken to the judge. He had no active role to play; he was there only to hear the jury announce its decision. The error in this case does not, like the denial of an impartial judge or the assistance of counsel, affect the trial from beginning to end. Rather, like most trial errors, it can be quantitatively assessed in order to determine whether or not it was harmless. *Cf. Rushen,* 464 U.S. at 119, 104 S.Ct. at 456 (defendant's absence from conversation between judge and juror is subject to harmless-error analysis because effect of supposed error "can normally be determined by a post-trial hearing"); *Hegler v. Borg,* 50 F.3d 1472, 1474–75 (9th Cir.1995) (where defendant was absent from readback of testimony, district judge examined court reporter and four jurors

defendant); *Snyder,* 291 U.S. at 122, 54 S.Ct. at 338 (no right to be present when jury was taken to view the crime scene). Because Wood has, for her own reasons, chosen not to contest this point, we leave it for another day. *See, e.g., Gagnon,* 470 U.S. 522, 105 S.Ct. 1482 (deciding, two years after *Rushen,* that type of absence at issue in *Rushen* did not amount to constitutional error).

**3.** Wood appeals and Rice cross-appeals on grounds other than the district court's ruling that Rice's absence at return of the sentence amount-

ed to reversible error. We leave the panel's opinion on these issues undisturbed. The panel, however, found it unnecessary to decide whether the district court had properly denied Wood's motion to strike a particular set of Rice's claims (the Group B claims) because they only related to sentencing and Rice's sentence had already been set aside. *Rice III,* 44 F.3d at 1403. Because we vacate the panel's ruling as to the sentence, the Group B claims once again become relevant and we refer them back to the panel.

from defendant's state trial to determine effect of his absence).

Our court, as well as the D.C. and Tenth Circuits, have applied harmless-error analysis to the defendant's absence at return of the verdict, while no circuit has held it to be structural error. *See Larson v. Tansy,* 911 F.2d 392, 396 (10th Cir.1990) (applying harmless-error analysis to defendant's absence from return of verdict); *United States v. Friedman,* 593 F.2d 109, 121 (9th Cir.1979) (defendant's "absence from [return of verdict and polling of jury] ... was harmless beyond a reasonable doubt"); *Wade v. United States,* 441 F.2d 1046, 1050 (D.C.Cir.1971) ("It is possible that defendant's absence [from return of verdict] made no difference in the result reached.").

A comparison between the error in this case and several classic trial errors supports our conclusion that Rice's absence was not structural error. *Cf. Fulminante,* 499 U.S. at 310–11, 111 S.Ct. at 1265–66 (comparing error in that case to other trial errors). *Fulminante,* for example, held that the admission of a coerced confession fully implicating defendant in the charged crime was merely a trial error. *Id.* at 310, 111 S.Ct. at 1265. All of the Justices in *Fulminante* agreed that a defendant's full confession is not just another piece of evidence; it is the one item that, alone, can form the basis of conviction by removing what otherwise would be a reasonable doubt. *Id.* at 296, 111 S.Ct. at 1257

(White, J., opinion of the Court) ("A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.") (internal quotations omitted); *id.* at 312, 111 S.Ct. at 1266 (Rehnquist, C.J., opinion of the Court) ("[A]n involuntary confession may have a more dramatic effect on the course of a trial than do other trial errors—in particular cases it may be devastating to a defendant ..."); *id.* at 313, 111 S.Ct. at 1266–67 (Kennedy, J., concurring) ("Apart, perhaps, from a videotape of the crime, one would have difficulty finding evidence more damaging to a criminal defendant's plea of innocence.").

Nor is the effect of a confession limited to the weight it might carry with the jury: Admission of a full confession immensely complicates the defendant's trial strategy; it puts pressure on him to give up the right to remain silent; it can foreclose alternative theories of the defense (such as an alibi) that are inconsistent with the confession. A wrongfully admitted confession also forces defendant to devote valuable trial resources neutralizing the confession or explaining it to the jury, resources that could otherwise be used to create a reasonable doubt as to some other aspect of the prosecution's case. The devastating effect of a full confession on the defendant's case is not a matter of speculation—it is hard fact documented in many judicial opinions and discussed widely in law review articles.[4] The Court nevertheless

---

4. The Supreme Court, for example, has held that a defendant's confession has such a powerful effect that an instruction admonishing the jury to disregard it with regard to a co-defendant does not, by itself, sufficiently protect the co-defendant. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (overruling *Paoli*); *see also Paoli v. United States,* 352 U.S. 232, 247, 77 S.Ct. 294, 302–03, 1 L.Ed.2d 278 (1957) (Frankfurter, J., dissenting). As noted above, all of the opinions in *Fulminante* speak of the extraordinary effect a confession can have on a trial. *See* 499 U.S. at 296, 111 S.Ct. at 1257–58 (White, J., opinion of the Court); *id.* at 312, 111 S.Ct. at 1266 (Rehnquist, C.J., opinion of the Court); *id.* at 313, 111 S.Ct. at 1266–67 (Kennedy, J., concurring). The Supreme Court's sentiments are widely endorsed. *See, e.g., Lufkins v. Leapley,* 965 F.2d 1477, 1483 (8th Cir.1992) ("We agree [with the Supreme Court] that a detailed, uncoerced admission by a defendant will tell a jury more about a particular crime

than any other evidence, and that a jury will give this evidence extraordinary weight."); *Collazo v. Estelle,* 940 F.2d 411, 424 (9th Cir.1991) (en banc) (quoting *Fulminante*); Comment, Charles J. Ogletree, Jr., *Arizona v. Fulminante: The Harm of Applying Harmless Error to Coerced Confessions,* 105 Harv.L.Rev. 152, 165, 167 (1991) (noting the "overwhelming, prejudicial effect" of coerced confessions); Gordon Van Kessel, *The Suspect as a Source of Testimonial Evidence: A Comparison of the English and American Approaches,* 38 Hastings L.J. 1, 122 (1986) (citing study that found conviction rates in robbery and burglary cases are 40 to 180 percent higher where there is a confession and noting, "Such connections between the existence of a confession and the conviction rate have led some observers to conclude that confessions most often lead to convictions and that without confessions conviction of the guilty would be substantially impaired.").

concluded that this was trial error, subject to harmless-error analysis.

Contrast this with the mere dram of authority supporting the view that defendant suffers *any* concrete harm whatever by being absent when the jury returns. In two centuries of state and federal case law, remarkably few opinions even mention the possibility that defendant's presence may cause jurors to have second thoughts when they return the verdict.[5] Experience, too, shows that jurors seldom have a change of heart when polled, and there is absolutely no evidence for the proposition that, when this does occur, it is influenced by defendant's presence.[6] Compared to the staggering effect of a coerced confession, the supposed error here is trivial. It is far more akin to a juror's absence during testimony, *see United States v. Olano,* 62 F.3d 1180, 1189 (9th Cir.1995) ("Errors of this nature are not structural defects depriving a defendant of a fair trial."), or the defendant's absence at the readback of trial testimony, *see Hegler,* 50 F.3d at 1477 ("[T]he constitutional error [in this case] is a trial error.").[7]

■ Nor is the result in *Fulminante* an anomaly. The Supreme Court has held that other, equally serious, constitutional errors are amenable to harmless-error analysis. One of the most hallowed rights a defendant has under our criminal justice system is the right to remain silent before and during trial. So important is this right that the prosecu-

tion may not penalize a defendant's decision to exercise it. *Doyle v. Ohio,* 426 U.S. 610, 611, 96 S.Ct. 2240, 2241–42, 49 L.Ed.2d 91 (1976) (impeachment through use of defendant's post-*Miranda* silence violates due process); *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965) (comment on defendant's failure to testify at trial violates right against self-incrimination). There are good reasons for this: The prosecutor's comment on the defendant's silence puts extraordinary pressure on the defendant to testify. Whether the defendant takes the stand, in turn, affects his theory of the case, the defenses he will assert and the evidence he will present. Despite the importance of this right and the pervasive effect its violation has on the trial, the Court has held that *Doyle* and *Griffin* errors are not structural. *See Brecht v. Abrahamson,* 507 U.S. 619, 628–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993) (*Doyle* error is trial error); *United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1979–81, 76 L.Ed.2d 96 (1983) (*Griffin* error is trial error); *Chapman v. California,* 386 U.S. 18, 21–22, 87 S.Ct. 824, 826–27, 17 L.Ed.2d 705 (1967) (same).

Another hallmark of our criminal justice system is the prosecution's burden of proving every element of the crime beyond a reasonable doubt. The Supreme Court has stated, "It is ... important in our free society that every individual going about his ordinary affairs have confidence that his government

**5.** Research discloses the following cases: *Larson,* 911 F.2d at 395–96; *Wade,* 441 F.2d at 1050; *State v. Okumura,* 58 Haw. 425, 570 P.2d 848, 853 (1977); *Lee v. State,* 509 P.2d 1088, 1094 (Alaska 1973); *Commonwealth ex rel. Milewski v. Ashe,* 363 Pa. 596, 70 A.2d 625, 627–28 (1950); *State v. Levato,* 183 Ariz. 558, 905 P.2d 567 (App.1995); *Kimes v. United States,* 569 A.2d 104, 111 (D.C.1989); *Davis v. State,* 416 So.2d 444, 447 (Ala.Crim.App.1982); *State v. Cruz,* 27 Ariz.App. 44, 550 P.2d 1086, 1088 (1976); *but see People v. Morales,* 80 N.Y.2d 450, 591 N.Y.S.2d 825, 829, 606 N.E.2d 953, 957 (1992) ("Indeed, a defendant's appearance at rendition of the verdict could serve little practical function.").

**6.** Our experience is consistent with that of the First, Fifth and Seventh Circuits. *See Audette v. Isaksen Fishing Corp.,* 789 F.2d 956, 958 (1st Cir.1986) (quoting *Shepherd*); *United States v. Shepherd,* 576 F.2d 719, 724–25 (7th Cir.1978)

("Experience teaches, however, that the likelihood of ... a change of mind [during polling] is remote."); *Martin v. United States,* 182 F.2d 225, 227 (5th Cir.1950) ("The right of a defendant to poll the jury is of course recognized and long established, but from a practical standpoint, experience of the years has shown that its benefit to a defendant in effecting a change or modification of the jury's verdict is substantially nonexistent."); *see also Rice I,* 757 F.2d at 910 (although there was a possibility Rice's presence would have caused a juror to change his vote, it wasn't "reasonably probable").

**7.** Another way of testing this proposition might be to imagine what would happen if 100 experienced trial lawyers were asked which burden they would rather bear during a criminal trial: admission of a coerced confession or absence of the defendant when the jury returns its verdict. We doubt that more than a handful—if any—would take the coerced confession.

cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Thus, in *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979), the Supreme Court held it was a denial of due process for a trial court to instruct the jury that a defendant is presumed to intend the ordinary consequences of his voluntary actions. This, the Court said, improperly puts the burden on the defendant to disprove intent, an element of the crime. *Id.* at 519, 99 S.Ct. at 2456–57. No one doubts that shifting the burden of proof significantly affects the trial and the jury's deliberations. The Supreme Court has nevertheless repeatedly held that giving such a jury instruction is only trial error, subject to harmless-error analysis. *See Yates v. Evatt*, 500 U.S. 391, 402, 111 S.Ct. 1884, 1892, 114 L.Ed.2d 432 (1991) (presumption of malice); *Carella v. California*, 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (conclusive presumption of intent); *Rose*, 478 U.S. at 579–82, 106 S.Ct. at 3106–08 (presumption of malice); *see also McKenzie v. Risley*, 842 F.2d 1525, 1530–31 (9th Cir.1988) (en banc) (harmless-error analysis applicable to *Sandstrom* violations).

Based on the foregoing authorities, we conclude that Rice's absence from the courtroom at the time the jury returned its verdict as to punishment, if it was constitutional error at all, *see* note 2 *supra*, was not structural error and is therefore subject to harmless-error analysis.[8]

### III

Having determined that the error here is not structural, we must next determine whether it was, in fact, harmless. Because this case comes to us on collateral review, the error is deemed harmless unless it has a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht*, 507 U.S. at 623, 113 S.Ct. at 1714 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557

(1946)). We commence our analysis by noting that, based on experience, it is unlikely that a juror will change his vote merely because defendant is present at return of the verdict and polling. *See* pp. 1143–44 and notes 5–7 *supra*. The prosecutor in this case made this even less likely by weeding out those jurors who would not or could not impose the death penalty. During voir dire, he repeatedly asked potential jurors whether they would be able to look the defendant in the eye and return a verdict of death. *See Wainwright v. Witt*, 469 U.S. 412, 420, 424, 105 S.Ct. 844, 850, 852, 83 L.Ed.2d 841 (1985) (prospective juror may be excluded for cause when his views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.") (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)).

It is also significant that this was the second time this particular jury had rendered a verdict in this case, the first time only five days earlier, at the conclusion of the guilt phase of the trial. The jury, at that time, had found Rice guilty of the aggravated first degree murder of each member of the Goldmark family. His presence in the courtroom at return of the first verdict did not deter any jurors from convicting him; it caused none of them to waver or change their minds. Thereafter, the same jury sat through a sentencing hearing that lasted a little over two hours. Petitioner was present in the courtroom during the hearing and was absent only during the playback of his taped confession, which occurred after the start of deliberations.

The evidence of aggravating circumstances was strong: Rice had, in a cold-blooded and violent manner, murdered a mother, a father and two small children in their own home, with absolutely no provocation and for no apparent reason. It was senseless butchery of the worst sort: the gratuitous destruction of an entire family. The Washington Supreme Court noted that "Rice never indicated any remorse for the deaths of the parents and had planned their deaths for months.

---

**8.** To the extent *Hays v. Arave*, 977 F.2d 475 (9th Cir.1992), on which the panel relied in reaching

the opposite conclusion, is inconsistent with our analysis, it is hereby overruled.

Moreover, he killed the children for no reason other than to prevent them from identifying him." *Rice I*, 757 P.2d at 914. These were facts with which this jury was intimately familiar.[9]

On the other hand, the evidence in mitigation was weak: Petitioner argued, as he had at trial, that he was insane. But he presented no new evidence of his mental condition at the time of the crimes; he relied on the same evidence presented at the guilt phase, which the same jury had already rejected in finding him guilty. The only new evidence Rice presented was his family's testimony that he did not have a history of being violent toward others and that he had been abused by his brothers. His attorney also argued that he had no prior record. We agree with the Washington Supreme Court that "[i]n this case, the mitigating circumstances were relatively unpersuasive." *Id.* at 915. This was therefore not a situation where the decision was close and Rice's presence could conceivably have tipped the balance in favor of imposing a life sentence.

After the jury's verdict was read, each juror was polled individually and expressed his assent to the verdict as announced. There is nothing that suggests any juror hesitated or expressed doubt or uncertainty about the decision. Petitioner has proffered no evidence from those present in the courtroom that any of the jurors displayed the least discomfort with the process pursuant to which the verdict was received. Rice had the opportunity to contact the jurors and determine whether any of them might have changed their minds had he been present when the sentence was announced. He presented no evidence other than an affidavit by Joel Babcock, the jury foreman, stating that if "the testimony of a mental health professional ... had been presented that David Rice actually suffered from a genuine mental disorder," the verdict would probably have been different. SER 327. This, of course, lends no support to the view that any of the jurors would have changed their votes had

Rice been present. The only thing the affidavit reveals is that the jurors had rejected Rice's evidence of insanity. Were there anything to suggest that petitioner's presence in the courtroom at the time the verdict was announced would have had any effect on the jury, we would be inclined to remand for further factual development. *See Hegler*, 50 F.3d at 1474–75, 1478 (district court examined court reporter and four jurors from petitioner's state trial to determine if error was harmless). But, given the clear-cut record presented, further factual development would not be fruitful. After a careful review of the facts and circumstances surrounding the jury's verdict, we conclude that the error here did not have a substantial and injurious effect or influence thereon, and that it was, therefore, harmless.

## IV

In *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), Justice Cardozo, speaking for the Court, warned us of the dangers of too far elevating procedure over substance:

> There is a danger that the criminal law will be brought into contempt ... if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free.

*Id.* at 122, 54 S.Ct. at 338. We cannot ignore this warning. We hold that a defendant's absence at return of the sentence, if constitutional error at all, is trial error subject to harmless-error analysis. In this case, the error was harmless. We vacate the panel opinion to the extent it is inconsistent herewith and refer the case to the panel for further proceedings. *See note 3 supra.*

The panel opinion is **VACATED** in part; the district court's judgment is **REVERSED** in part; the case is **REMANDED** to the original three-judge panel for resolution of the remaining issues.

9. In order to convict Rice of first degree aggravated murder, the jury had to find one or more aggravating factors, as defined in Wash.Rev.Code § 10.95.020. The jury in this case found three: Rice committed the murders to conceal the commission of a crime; the murders were part of a common scheme or plan to murder more than one victim; and the murders were committed in furtherance of a robbery or burglary. *Rice I*, 757 P.2d at 900.

HAWKINS, Circuit Judge, concurring:

I join the majority opinion because I agree that the defendant's absence under the facts of this case does not constitute structural error.

Prudent persons, however, should avoid reading this decision any more expansively than its facts permit. This decision does not broadly sanction the absence of the defendant from the return of a verdict and wise trial judges should be loathe to ever permit a return in the absence of the defendant.

This defendant was present during his trial and for the return of the jury's verdict on guilt or innocence. Also, the members of the penalty jury were not strangers to the events or the defendant's participation in them, because, under Washington law, if a penalty phase is required, the same jury hears the evidence and decides the punishment. Mr. Rice therefore confronted the same jurors who had earlier found him guilty; his absence was from the return of the penalty verdict and it alone.

Under these fairly limited and particular facts, the majority has properly determined that the absence of the defendant here was not an error of such magnitude as to impact the very fabric of the defendant's trial. *Cf. Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991).

D.W. NELSON, Circuit Judge, with whom Circuit Judges JAMES R. BROWNING, SCHROEDER, FLETCHER, and DAVID R. THOMPSON, join, dissenting:

In *Snyder v. Massachusetts,* Justice Cardozo established that a state court cannot violate any constitutional right "ranked as fundamental" by "the traditions and conscience of our people." 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). The majority claims that state and federal case law give little reason to believe that a court violates a fundamental constitutional right when it allows a jury to render its sentence in the defendant's absence. I respectfully disagree.

Courts throughout the nation have repeatedly held that allowing a jury to announce its decision in the absence of the defendant violates fundamental and inviolable constitutional rights. While this court now indicates that the defendant's presence at sentencing is nothing but meaningless procedure, the consensus of federal and state precedent is that

> [t]he presence of the accused is not a mere form. It is of the very essence of a criminal trial not only that the accused shall be brought face to face with the witnesses against him, but also with his triers.... And at no time in the whole course of the trial is this right more valuable than at the final step when the jury are to pronounce that decision which is to restore him to the liberty of a citizen, or to consign him to the scaffold or to a felon's cell in the state prison.

*Temple v. Commonwealth,* 77 Ky. 769, 771 (1879); *see also, e.g., United States v. Villano,* 816 F.2d 1448, 1452 (10th Cir.1987) (en banc) (sentence imposed in defendant's absence violates fundamental constitutional and human rights); *State v. Levato,* 183 Ariz. 558, 905 P.2d 567 (App.1995) (*review denied in part, granted in part*) (return of jury decision in absence of defendant is equally structural error in conviction and in return of sentence) (*quoting Temple,* 77 Ky. at 771) (*citing United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486, *reh'g denied,* 471 U.S. 1112, 105 S.Ct. 2350, 85 L.Ed.2d 865 (1985); *Snyder,* 291 U.S. at 105–6, 54 S.Ct. at 332; *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987)); *Kimes v. United States,* 569 A.2d 104, 111 (D.C.App.1989) (*quoting Temple,* 77 Ky. at 771); *People v. Robertson,* 48 Cal.3d 18, 255 Cal.Rptr. 631, 767 P.2d 1109 (1989) (en banc), *cert. denied,* 493 U.S. 879, 110 S.Ct. 216, 107 L.Ed.2d 169, *reh'g denied* 493 U.S. 985, 110 S.Ct. 525, 107 L.Ed.2d 525 (1989), 498 U.S. 926, 111 S.Ct. 309, 112 L.Ed.2d 262 (1990) (defendant has constitutional right to be present at imposition of sentence under *Snyder,* 291 U.S. at 105–08, 54 S.Ct. at 332–33; *Carver v. Commonwealth,* 256 S.W.2d 375, 377 (Ky.1953) (defendant's right to face jury at time of polling is " 'the most substantial right of the accused in a felony case' ") (citation omitted).

## "TRANSCENDS THE CRIMINAL PROCESS"[1]

Courts have long recognized the defendant's fundamental due process right to face those who will deprive him of his life or liberty. To hold that a defendant is practically irrelevant to the process that deprives him of life or liberty is to declare that the individual has no "basic constitutional protections" before the absolute power of the state. *In re Klein,* 197 Cal.App.2d 58, 63, 67, 17 Cal.Rptr. 71 (Cal.App. 1 Dist.1961) ("[b]asic constitutional protections attach" to "so grave a pronouncement" that "deprives the defendant of status, liberty and sometimes property;" imposition of sentence *in absentia* reversed on grounds that it denied defendant's "fundamental constitutional rights").

Because of the core constitutional and human values at stake, a sentence imposed in the defendant's absence must be reversed. *See Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) ("some errors necessarily render a trial fundamentally unfair" and "require reversal"). As the Tenth Circuit declared in *United States v. Villano,* "[t]he imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty." 816 F.2d 1448, 1452 (10th Cir.1987) (en banc). Accordingly, a sentence imposed *in absentia* requires reversal, since the defendant's right to be present at the imposition of sentence is central to the rights enumerated in the Constitution's Fifth, Sixth and Fourteenth Amendments and is thus "fundamental to the entire law of criminal procedure." *Id.* (*citing Gagnon,* 470 U.S. 522, 105 S.Ct. 1482; *Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892) ("dictates of humanity require defendant's presence")); *see also Warrick v. United States,* 551 A.2d 1332, 1334 (D.C.App.1988) (defendant's right of presence when sentence imposed is a "fundamental" due process right under *Gagnon, Snyder,* and *Villano;* absence at sentencing requires reversal).

## "A FAIR AND JUST HEARING WOULD BE THWARTED BY HIS ABSENCE"[2]

State and federal case law also make clear that the public has an interest in protecting this right: requiring jurors to face the defendant preserves the integrity and fairness of the American justice system. As the D.C. Circuit noted in *United States v. Curtis,* "the requirement that the defendant be present when sentence is passed" does not merely serve the defendant; "the state has an independent interest in requiring a public sentencing in order to assure the appearance of justice." 523 F.2d 1134, 1134 (D.C.Cir.1975). Likewise, the First Circuit in *Thompson v. United States* found that the defendant's absence at sentencing "affects seriously the fairness, integrity and public reputation of judicial proceedings." 495 F.2d 1304, 1306 (1st Cir.1974); *see Rose,* 478 U.S. at 578, 106 S.Ct. at 3106; *see Lee v. State,* 31 Ala.App. 91, 13 So.2d 583, 586–7, *cert. denied,* 244 Ala. 401, 13 So.2d 590 (1943) (" 'The public has an interest in every case involving the life or liberty of a citizen' ") (citation omitted).

## CANNOT BE "QUANTITATIVELY ASSESSED"[3]

Bypassing the fundamental nature of the interests at stake when a jury renders its decision, the majority instead chooses to focus on cases involving the psychological impact of the defendant upon jurors at the return of the verdict. The implied argument is that if the defendant's presence has merely a "gossamer" effect at the determination of guilt or innocence, it certainly has little to no effect on sentencing. Yet the very cases that the majority cites to show that the defendant's presence is irrelevant to the outcome of the trial proceedings actually show its immeasurable significance.

I do not dispute that some courts have applied the harmless error test to the defen-

---

1. *Arizona v. Fulminante,* 499 U.S. 279, 311, 111 S.Ct. 1246, 1265–66, 113 L.Ed.2d 302 (1991).

2. *Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667 (*quoting Snyder,* 291 U.S. at 108, 54 S.Ct. at 333).

3. *Fulminante,* 499 U.S. at 308, 111 S.Ct. at 1264.

dant's absence when the jury returned its verdict. However, what is important is not the fact that the test was used, but the conclusions the court reached after applying it. For example, prior to *Wade v. United States* the D.C. Circuit had not made any determination as to the constitutional dimensions of this issue, 441 F.2d 1046, 1049, (D.C.Cir.1971), and so the court applied harmless error analysis to determine whether there was any reasonable possibility of prejudice. *Id.* at 1050.[4] The *Wade* court ruled that the jury's verdict had to be reversed, because the effect of a defendant's absence when a jury renders its verdict is impossible to calculate. *See Fulminante,* 499 U.S. at 308–9, 111 S.Ct. at 1264–65 (unlike trial error, structural error cannot be "quantitatively assessed" and therefore defies harmless error analysis). The court determined that to hold the defendant's absence to be

> harmless would be too speculative. It would assume to reconstruct what might have eventuated had he been present, when that cannot truly be reconstructed with a degree of certainty essential to avoid the reasonable possibility of prejudice.

*Wade,* 441 F.2d at 1051; *see also People v. Williams,* 186 A.D.2d 161, 587 N.Y.S.2d 704 (1992) (defendant's absence at verdict violates a longstanding "fundamental right" under *Snyder* and requires reversal); *Shaw v. State,* 282 A.2d 608 (Del.1971) (defendant's absence at verdict violates fundamental constitutional right and requires reversal under *Snyder*).

Other courts have followed the *Wade* court's reasoning. The Tenth Circuit in *Larson v. Tansy* found that the defendant's absence at the return of the jury's verdict violates a " 'substantial' " due process right under *Snyder,* since the "defendant's mere presence, aside from any assistance defendant could have given to his counsel, would have been useful and would have provided more than a shadow of benefit." 911 F.2d

392 (10th Cir.1990) (*quoting Lee v. State,* 509 P.2d 1088 (Alaska 1973)); *see also* 911 F.2d at 394 (*quoting Snyder,* 291 U.S. at 105–6, 54 S.Ct. at 332). The *Larson* court explicitly agreed with the *Wade* court that when the defendant is absent when the jury renders its decision, not only is the defendant "deprived of his due process right to exert a psychological influence upon a jury," but there is also " 'a reasonable possibility that the jury speculated adversely to the defendant about his absence from the courtroom.' " 911 F.2d at 396 (*quoting Wade,* 441 F.2d at 1050). *See also Levato,* 905 P.2d at 570 (*quoting Kimes,* 569 A.2d at 111; *Lee,* 509 P.2d at 1094); *Kimes,* 569 A.2d at 111 ("(t)he psychological influence of the eye-to-eye contact between juror and defendant may be significant enough to cause a juror to change his or her mind when outside the pressure of the jury room;" defendant's absence "could cause adverse speculation") (*citing Wade,* 441 F.2d at 1050; *Lee,* 509 P.2d at 1094).

A long tradition of cases prior to *Wade* and *Larson* also testify to the unquantifiable impact of a defendant's presence on jurors as they render their decision. For example, the Alaska Supreme Court in *Lee* noted that the defendant's absence "cannot be regarded as harmless," since the "psychological distinction" between a jury poll with the defendant present and one in the defendant's absence "is not a minor one." *Lee,* 509 P.2d at 1093. Likewise, the *Milewski* court observed that

> (t)he words 'Prisoner look upon the jurors; jurors look upon the prisoner' is (*sic*) of great significance. (citation omitted) Not only has the prisoner the right to have a polling of the jury but his very presence may move some of the jury to have compassion on him.... In our examination of this question we have not found a single jurisdiction in which the absence of a defendant in a felony case from the courtroom at the time the jury renders its verdict ... is not a fatal error.

---

4. Another case from which the majority mistakenly infers a finding of trial error is *United States v. Friedman,* 593 F.2d 109, 121 (9th Cir.1979). The court did not have to reach the question of whether a fundamental right was involved, because Friedman had "voluntarily waived his right to be present" by leaving the courthouse area at the time the verdict was to be rendered. *Id.*

*Milewski,* 70 A.2d at 625; *see also Diaz v. United States,* 223 U.S. 442, 454, 32 S.Ct. 250, 254, 56 L.Ed. 500 (defendant has Sixth Amendment right to be present at trial, "especially at the rendition of the verdict"); *Temple,* 77 Ky. at 771 (defendant has "a right to be present not only that he may see that nothing is done or omitted which tends to his prejudice, but to have the benefit of whatever influence his presence may exert in his favor").

### *"MORE THAN A SHADOW"*[5]

If the "mere presence" of the defendant has a significant effect on jurors at the guilt phase of the trial, the impact of the defendant's presence on jurors is even greater at sentencing, especially when jurors must decide whether to impose the death sentence. The majority Opinion itself testifies to this when it notes that "during voir dire, (the prosecutor) repeatedly asked potential jurors whether they would be able to look the defendant in the eye and return a verdict of death." As another Washington prosecutor noted, the presence of the defendant at sentencing has an undeniable effect on the outcome: "Jurors have to look a defendant in the eye and return a verdict; real human beings are involved in this every step of the way." Christy Scattarella, "Prosecutor Wants to See Execution of Triple Murderer," *Seattle Times,* May 6, 1994, at B1.

Washington jurors are not the only ones affected by the defendant's presence when they pronounce sentence. A lawyer in the New Jersey Attorney General's office has observed that juries traditionally have a hard time imposing the death penalty, since "(i)t's one thing to be in favor of the death penalty; it's another to look a defendant in the eye and say, 'You should die.'" Jeffrey Kanige, "Death Amendment Seen as Having Slight Effect," *N.J.L.J.,* Nov. 30, 1992, at 5 (quoting Deputy Chief of the Appellate Division). Likewise, as Connecticut jurors recalled after a sentencing hearing,

> they had a difficult time listening to their decision being read. Dal Zin remembers shaking.

Garen says, "I had to look at the defendant in the eye, knowing that my personal feelings were true and right."

Elaine Song, "Weighing Death," *Conn. L.Trib.,* Apr. 24, 1995, at 1.

### *"THE TRADITIONS AND CONSCIENCE OF OUR PEOPLE"*[6]

In *Hays v. Arave,* the Ninth Circuit joined courts throughout the land in holding that a defendant has a fundamental constitutional right to be present when the jury pronounces its sentence in felony trials. 977 F.2d 475 (9th Cir.1992). Nothing the *Hays* court said was new; the effect of the defendant's presence upon jurors, the inability to quantify the impact of his absence, and the abhorrence of *in absentia* sentencing to democratic conceptions of justice are themes resounding throughout federal and state case law. *Hays,* 977 F.2d at 481.

Even if one were to have any doubts about the right to be present at the imposition of a non-capital sentence, the fundamental due process right to be present at critical stages of the trial unquestionably applies to death penalty proceedings. *Clemons v. Mississippi,* 494 U.S. 738, 746, 110 S.Ct. 1441, 1447, 108 L.Ed.2d 725 (1990) ("capital sentencing proceedings must of course satisfy the dictates of the Due Process Clause") (*citing Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1976) (plurality opinion) (sentencing a "critical stage" of criminal proceedings in death penalty cases)). The pronouncement of the death sentence is the most solemn moment in the lives of both the jurors and the defendant; to say that the person facing death has no connection to the people and proceedings charged with deciding his fate is to say that we are no longer human. *Villano,* 816 F.2d at 1452 ("dictates of humanity" demand defendant's presence, since "the imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty"); *Harris v. State,* 632 So.2d 503, 511 (Ct.Cr.App.Ala.1992) ("the capital defendant's interest in attending his sentencing

---

5. *Larson,* 911 F.2d at 395.

6. *Snyder,* 291 U.S. at 105, 54 S.Ct. at 332.

hearing is as great as his interest in being present at the guilt determining stage") (*citing Gardner*, 430 U.S. at 358, 97 S.Ct. at 1204–05); *Kimes*, 569 A.2d at 111; *Powell v. Commonwealth*, 346 S.W.2d 731, 734 (Ky. 1961) (defendant's absence at jury's imposition of sentence requires reversal of sentence; *in absentia* sentencing violates fundamental Fourteenth Amendment right and is *per se* prejudicial in capital case) (*quoting Temple*, 77 Ky. at 771).

Today, this court overrules *Hays* and in so doing silences the voice of history. Court after court has ruled that the defendant's absence when a jury renders its decision violates fundamental constitutional rights and requires reversal. The majority now tells us that instead of the consensus of case law, we must follow the hypothetical preferences of a hundred imaginary lawyers. When Justice Cardozo told us to look to "the traditions and conscience of our people," *Snyder*, 291 U.S. at 105, 54 S.Ct. at 332, that is not what he had in mind.

## *"AN ESSENTIAL CONDITION OF DUE PROCESS"*[7]

As Justice Cardozo wrote, a "criminal, however shocking his crime, is not to answer for it with forfeiture of life or liberty till tried and convicted in conformity with law." *People v. Moran*, 246 N.Y. 100, 158 N.E. 35, 37 (1927). "Fundamental" rights must "be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof." *Snyder*, 291 U.S. at 122, 54 S.Ct. at 338. Today the majority declares that in the Ninth Circuit this established principle of American law no longer holds true.

The majority's decision will have another unavoidable effect on felony trials and sentencing hearings. For decades, jurors have known that they would have to look into the eyes of the person whose fate was in their hands. This inevitable moment of truth forced jurors to think seriously about whether they could in good conscience deprive a fellow citizen of his life or liberty. Now jurors no longer have to tremble at the thought of facing the man they judge, since

the presence of the defendant is merely one quantifiable piece of evidence among many.

The majority's ruling in this case is the ultimate triumph of procedure over substance: the person is now irrelevant to the process. This is the nightmare world of *The Trial;* it is not American justice. Like Josef K, David Lewis Rice was sentenced to death *in absentia*, and, like Josef K, Rice will go to his grave asking, "Where is the judge whom I have never seen?" Franz Kafka, *Der Prozess* 194 (1935, 1979).

---

7. *Snyder*, 291 U.S. at 119, 54 S.Ct. at 337; *see* *Stincer*, 482 U.S. at 745, 107 S.Ct. at 2667.