UNITED STATES of America, Plaintiff,

v.

Vincent DeMARTINO, Defendant.

No. 92 CR 114 (ERK).

United States District Court,
E.D. New York.

Nov. 7, 1996.

George Stamboulidis, Asst. U.S. Atty., Office of the U.S. Atty., for the Eastern Dist. of New York, Criminal Div., Brooklyn, NY, for plaintiff.

Michael Ross, LaRossa, Mitchell & Ross, New York City, for defendant.

## CORRECTED MEMORANDUM & ORDER

KORMAN, District Judge.

Pursuant to Fed. R. Crim. P. 36, the defendant moves to conform his written sentence in the Judgment of Conviction to the oral sentence that was imposed on him in court. This motion is denied for the reasons that follow.

### FACTS

Defendant Vincent DeMartino was convicted of possession of a firearm by a convicted felon. At the time of sentencing for this offense, the defendant was already serving time for violating his parole on a prior conviction for conspiracy to commit bank robbery and possession of the proceeds of the robbery. Thus, at sentencing, the defendant represented that irrespective of the sentence imposed for the firearm possession offense, he would serve at least another seventy-one months in connection with his parole violation. R. at 19–20.

At a hearing on April 23, 1993, the defendant was sentenced orally to serve forty-eight months. This sentence was to be served consecutively to his parole violation sentence. R. at 27–7 & 8. This was reduced to writing later that same day in the Judgment of Conviction, which sentenced the defendant to serve sixty-three months, forty-eight of which he would serve consecutively to the parole sentence and fifteen of which he would serve concurrently with it.

The Sentencing Guidelines in effect at that time required imposition of a sentence in the range of fifty-one to sixty-three months for the firearm possession offense. U.S. Sentencing Guidelines Manual (hereinafter "Guidelines") § 2K2.1 (1991). The principal issue at defendant's sentencing proceedings on March 8, 1993 and April 23, 1993 was not the length of his sentence, but the extent to which it should run consecutively to the parole violation sentence. See Letter from Ross to Judge Korman of 3/24/93 (hereinafter "Ross Ltr."), at 2–3 ("[I]n light of Your Honor's statements at the March 8th hearing that it is your intention to impose at least a partially consecutive sentence, I will address the manner in which Section 5G1.3 guides the Court in determining how that consecutive sentence should be computed.").

Imposition of a partially consecutive sentence was permissible pursuant to section 5G1.3(c) of the Guidelines, which provided that "the sentence for the instant offense shall be imposed to run consecutively to the prior unexpired term of imprisonment *to the extent necessary to achieve a reasonable incremental punishment for the instant offense.*" Guidelines § 5G1.3(c) (emphasis supplied). Pursuant to this section, the defendant argued that the incremental punishment appropriate for his firearm possession offense was in the range of fifteen to forty-eight months, and thus most of the argument at the April 23 hearing concerned consecutive service in this range. Ross Ltr. at 5; R. at 5–23, 6–6, 18–25, 19–7, 20–6 & 7, 20–16 & 17, 22–14, 26–7, 26–18, 26–25, 27–8.

Because of the way the argument was framed, at the conclusion of the April 23 hearing I sentenced the defendant to forty-eight months consecutive service, inadvertently omitting mention of a period of concurrent service. Later that same day I remedied this oversight and reduced the defendant's sentence to writing in the Judgment of Conviction, which ordered the defendant to serve forty-eight months consecutively and fifteen months concurrently. This brought the total sentence imposed, sixty-three months, within the range permitted by the Guidelines. Indeed, all the parties acknowledge that without such a correction, the sentence would have constituted a downward departure from the permitted range.

Nonetheless, all the parties understood that the Judgment of Conviction effectively imposed the same sentence as had been imposed orally at the April 23, 1993 hearing. At that time, given the defendant's repre-

sentations that he would serve in excess of another sixty-three months for his parole violation, inclusion of a period of concurrent service in the Judgment of Conviction would not affect the defendant's ultimate release date.

This issue was not raised on the unsuccessful appeal that was taken from the Judgment of Conviction. *United States v. DeMartino*, 9 F.3d 1536 (2d Cir.1993). The defendant now moves to conform the written Judgment of Conviction to the oral sentence, because contrary to all the parties' reasonable expectations on April 23, 1993, the defendant was again granted early parole on his robbery conviction. That parole became effective July 17, 1993, some three months after the defendant was sentenced on the firearm possession charge. Malone Decl. at 2. As a result of this unexpected reprieve, the defendant's forty-eight-month consecutive and fifteen-month concurrent sentence was effectively transformed into a sentence of sixty-three months consecutive. While this is more consecutive service than the parties anticipated at the time of sentencing, it was the same sentence that I would have imposed if I had known that the defendant would again qualify for parole on the bank robbery charge three months after sentencing.

## DISCUSSION

This motion is made pursuant to Fed. R.Crim.P. 36, which provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." While this Rule "covers only minor, uncontroversial errors[,]" *United States v. Werber*, 51 F.3d 342, 347 (2d Cir.1995), it is available to conform a written Judgment of Conviction to an oral sentence.

■ As a general rule, the oral sentence controls in the event of a conflict with a written judgment enhancing it, because only the former has been held to satisfy the Fed. R.Crim.P. 43 requirement that the defendant be present at his sentencing. *Bartone v. United States*, 375 U.S. 52, 53–54, 84 S.Ct. 21, 22–23, 11 L.Ed.2d 11 (1963); *United*

*States v. Marquez*, 506 F.2d 620, 622 (2d Cir.1974); *Patterson v. United States*, 386 F.2d 142, 143 (5th Cir.1967). This rule does not dispose of the issue in this case, however, for at least two reasons: (1) pursuant to Fed.R.Crim.P. 35(c), I retain the power to correct a clearly erroneous oral sentence, which is what the Judgment of Conviction accomplished; and (2) any error I made in correcting the sentence without the defendant present was harmless.

■ First, Fed.R.Crim.P. 35(c) permits the correction of "arithmetical, technical, or other clear error" within seven days after a sentence is imposed. In this case, the Judgment of Conviction corrected such "clear error" error by ensuring that the ultimate sentence imposed was in conformance with the applicable requirements of the Guidelines. Accordingly, Rule 35(c) vested me with authority to effect, through the Judgment of Conviction, a correction to this otherwise clearly erroneous oral sentence.

■ Second, the fact that this correction was made without calling the defendant back to the courtroom does not, on constitutional or other grounds, render it nugatory. The defendant's constitutional right to be present at all critical stages of his criminal proceeding is not violated unless his presence " 'has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge[ ]' " or the sentence. *Rice v. Wood*, 77 F.3d 1138, 1140 n. 2 (9th Cir.1996) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2672, 96 L.Ed.2d 631 (1987)). Moreover, this right, as with most constitutional rights, "is subject to a harmless error analysis." *Rushen v. Spain*, 464 U.S. 114, 119 n. 2, 104 S.Ct. 453, 456 n. 2, 78 L.Ed.2d 267 (1983). Thus in *Rice*, the Ninth Circuit held that the defendant's absence from the courtroom when the jury announced its decision to impose the death penalty was harmless error, because there was not "anything to suggest that petitioner's presence in the courtroom at the time the verdict was announced would have had any effect on the jury." *Rice*, 77 F.3d at 1145.

■ Moreover, although the scope of Fed. R.Crim.P. 43, which requires the presence of

a defendant at "every stage" of the proceeding, is "broader than the constitutional right alone," 3A Charles Alan Wright, *Federal Practice and Procedure* § 721 (2d Ed.1987), "[t]he usual rule is that an error concerning the defendant's presence at all stages of the trial is harmless if it can be said that there was no reasonable possibility of prejudice from the error[.]" *Id.* at § 724.

The defendant here cannot make the showing required to overcome the harmless error rule. The defendant does not argue that, if he had been called back to the courtroom on April 23, 1993 and apprised of the inclusion in his sentence of a period of concurrent service, he would have raised any objection to the proposed correction. Nor has defendant proffered any plausible objection that he could have raised to such a correction at that time. Indeed, had the defendant contested inclusion of a period of concurrent service in the written sentence, on the grounds that he could seek or obtain early parole on the robbery conviction (an inconceivable argument in light of the parties' representations at the time), and prevailed, he likely would have prompted the United States Attorney to appeal this sentence as contravening the Guidelines.

Moreover, raising such an argument only a few hours after the oral sentence was imposed would have afforded me another independent basis upon which to correct the sentence—namely, reliance on the erroneous factual premise that the defendant would serve, without the possibility of parole, at least another seventy-one months for his parole violation. *See United States v. Rico*, 902 F.2d 1065, 1068 (2d Cir.1990) *cert. denied sub nom. Baron v. United States*, 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). Under these circumstances, even if the defendant should have been present when the Judgment of Conviction was entered, it is fair to conclude that his presence would not have made any difference in terms of the ultimate sentence imposed.

*United States v. Marquez*, 506 F.2d 620 (2d Cir.1974), upon which the defendant relies, does not compel a contrary conclusion. In *Marquez*, the Second Circuit held that Fed.R.Crim.P. 36 could be used to correct the "plain" error of a sentencing judge in using the written judgement of conviction to "enlarg[e] a sentence in the absence of a defendant." *Id.* at 622. More particularly, the Second Circuit observed that, "after imposing sentence in a defendant's presence, the Court cannot thereafter increase the sentence with defendant absent[,]" and that "the error, in enlarging the sentence in the absence of a defendant, is so plain in light of the requirements of Fed.R.Crim.P. 43, that Courts of Appeals under their broad supervisory powers should correct such errors even if they have not been alleged on appeal." *Id.* (citing *Bartone v. United States*, 375 U.S. 52, 53–54, 84 S.Ct. 21, 22–23, 11 L.Ed.2d 11 (1963)).

*Marquez* is distinguishable from this case. In *Marquez* the written judgment actually increased the effective sentence at the time it was entered, and thus it was impossible to argue that the defendant had not been prejudiced by his absence. The written judgment here, while technically increasing the sentence, was not understood by anyone to have any practical effect on it. Indeed, for this reason, the defendant's presence at the time the Judgment of Conviction was entered would not have had any practical effect on the ultimate sentence imposed.

■ The "plain error" doctrine upon which the Court of Appeals relied in *Marquez*, unlike the "harmless error" doctrine discussed above, places on a defendant "the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993). Because the defendant here has failed to meet this burden, the violation of Fed. R.Crim.P. 43 was hardly "so plain" that it renders the Judgment of Conviction amenable to the kind of peremptory relief that Fed.R.Crim.P. 36 provides. Indeed, if this had been a proceeding pursuant to 28 U.S.C. § 2255 to set aside or correct the sentence, and if this relief was not precluded by the defendant's failure to raise the issue on appeal, the defendant could not have prevailed simply by alleging a violation of Rule 43. Instead, the defendant would have had to allege "a complete miscarriage of justice" or "an omission inconsistent with the rudimen-

tary demands of fair procedure" in order to state a cognizable claim for relief. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *United States v. Timmreck*, 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). Where, as here, a defendant cannot even show how he was prejudiced by not being present when a technical correction to his oral sentence was made, he should not qualify for relief pursuant to Rule 36. Accordingly, defendant's motion is denied.

**SO ORDERED.**

LAW OFFICES
LAROSSA, MITCHELL & ROSS
41 MADISON AVENUE
THIRTY FOURTH FLOOR
NEW YORK, N.Y., 10010

March 24, 1993

*BY FACSIMILE*

Honorable Edward R. Korman
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Vincent DeMartino;
Crim. Dkt. 92–Cr–114 (ERK)

Dear Judge Korman:

This letter will address two issues raised at the sentencing hearing before Your Honor on Monday March 8, 1993.

A. *The Government's Unwarranted Claim That Mr. DeMartino Should Receive A Sentencing Enhancement for Obstruction Of Justice.*

Because the government's obstruction of justice claim was argued exhaustively in court at the March 8th hearing, I will not further belabor the issue in this letter. I will, however, as Your Honor suggested, state "for the record" that the denials of misconduct by Mr. DeMartino contained in my December 29, 1992 Sentencing Memorandum were intended to represent our position that certain statements in the Pre–Sentence Report were not supported by sufficient evidence to be relied upon by the Court as a basis to impose an aggravated sentence upon Mr. DeMartino. If the tone of my Sentencing Memorandum suggested anything to the contrary, it was unintended.

Accordingly, I respectfully submit that no obstruction of justice enhancement be imposed upon Mr. DeMartino.

B. *The Court Should Be Guided By Section 5G1.3(c) In The Imposition Of An Only Partially Consecutive Sentence.*

At the March 8th hearing, Your Honor asked for a further written submission by the parties on the question of to what extent, if any, does Guidelines Section 5G1.3(c) permit a partially consecutive sentence. In this regard, I begin with the same observation Your Honor made at the hearing—that is, whatever analogies the government has made to the provisions of Chapter 7 of the Guidelines which deal with how a court is to sentence a probation or parole violator, that Chapter is simply not applicable to Mr. DeMartino. Rather, Mr. DeMartino appears before Your Honor as a person who is to be sentenced for a new crime while subject to his nine-year undischarged term of imprisonment. There can be no question, then, that Guidelines § 5G1.3 alone is the governing Guidelines provision.

I have previously set forth in my prior submissions our position concerning why Mr. DeMartino should receive a sentence that runs entirely concurrent to the prison term he is now serving, and accordingly I will not repeat the arguments here. Rather, in light of Your Honor's statements at the March 8th hearing that it is your intention to impose at least a partially consecutive sentence, I will address the manner in which Section 5G1.3(c) guides the Court in determining how that consecutive sentence should be computed. Guidelines Section 5G1.3(c) provides:

[In the circumstances present in this case], the sentence for the instant offense shall be imposed to run consecutively to the prior unexpired term of imprisonment *to*

*the extent necessary to achieve a reasonable incremental punishment for the instant offense.* (Emphasis added.)

Application Note 4 of the Commentary to this Section provides a manner in which the court can [1] compute what constitutes "a reasonable incremental punishment." Application Note 4 provides that to the extent practicable, the Court should impose a sentence for the new crime "that results in a combined sentence that approximates the total punishment that would have been imposed under Section 5G1.2 (Sentencing on Multiple Counts of Conviction) had all the offenses been federal offenses for which sentences were being imposed at the same time." *Id.*

Section 5G1.2(b),[2] in turn, provides that the sentence to be imposed on each count is to be determined by the grouping provisions of Part D, Chapter Three (Section 3D1.1).[3] Because Mr. DeMartino's separate conspiracy and gun convictions are not "closely related" (*see* Sections 3D1.2 and 3D1.3), a Section 3D1.4 analysis must be performed. Section 3D1.4 treats the gun charge and the prior conspiracy for bank robbery as separate "groups." In that respect the following computations are relevant to the crimes:

| Group One: | Present Gun Conviction: Total Offense Level of 20 [4] | | |
|---|---|---|---|
| Group Two: | Prior Conspiracy to Commit Bank Robbery: Total Offense Level of 30, computed at as follows: [5] | | |
| | — Base Level | 20 | 2B3.1(a); 2X1.1(a) |
| | — Bank was robbed | +2 | 2B3.1(b)(1) |
| | — Gun Brandished | +5 | 2B3.1(b)(2)(C) |
| | — $295,000 was stolen | +3 | 2B3.1(b)(6)(D) |
| Total Offense Level | | 30 | |

Because the numerical difference between the two groups is 9 or more levels (i.e., 30 for robbery; 20 for gun possession; with a difference of "10"), Section 3D1.4(c) instructs the Court to disregard the lower group and consider only the conspiracy offense level of 30. A level 30 for Mr. DeMartino's Criminal History IV renders a Guidelines range of 135 to 168 months. Pursuant to Section 5G1.3(c), a sentence in that range that would run from the date of Mr. DeMartino's initial incarceration on the 1985 conspiracy conviction because Application Note 4 requires the Court to impose a consecutive sentence that takes into consideration the punishment for the initial crime. Because Mr. DeMartino will "max out" on his 15 year conspiracy sentence at 10 years—i.e. 120 months—Your Honor is guided by Application Note 4 to impose an incremental consecutive sentence ranging

1. We still maintain that Section 5G1.3(c) gives the Court ample grounds to conclude that Mr. DeMartino's parole revocation—which will result in Mr. DeMartino serving an additional 9 year prison term (which will "max out" two thirds, for a total of six years)—is a sufficient "incremental" punishment. The Court need not follow Application Note 4 because Application Notes provide general guidance only and are not binding on the Court. *See* Guidelines Section 1B1.7 ("Significance of Commentary").

2. Section 5G1.2(b) is applicable because: there are no applicable mandatory consecutive sentence provisions (*see* Section 5G1.2(a)); there are no applicable minimum sentence provisions (*see* Section 5G1.2(b) and 5G1.1(b)); and the maximum statutory 10 year sentence under the gun conviction count is less than the minimum of the

Guidelines range. (*See* Section 5G1.2(G) and 5G1.1(a).)

3. Section 5G1.2 also incorporates Part C of Chapter 5. However, Part C, Chapter 5 simply provides for sentences to be imposed within the Guidelines range and for other minimum sentences not applicable here.

4. We still maintain our previously announced position that Mr. DeMartino's Total Offense Level is "14." But in light of Your Honor's March 8th ruling that it was a "20," we will utilize the higher Total Offense Level of 20 solely for purposes of this discussion.

5. We assume for this discussion the facts relating to the prior bank robbery conspiracy to as set forth in the P.S.I., pp. 7–9.

from 15 months (135 months minus 120 months equals 15 months) or at most 48 months (168 months minus 120 months equals 48 months).

Based upon the materials we previously submitted in our December 29th submission concerning Mr. DeMartino's family circumstances, his help of others in need, etc., we submit that an incremental consecutive sentence of only 15 months is the most appropriate incremental sentence in this case.

Respectfully submitted;

/s/ Michael S. Ross

Michael S. Ross

MSR:cmb

85730931

cc: Honorable Edward R. Korman (By Letter)

A.U.S.A. Andrew Weissman (By Facsimile)

Probation Officer Joan Collins (By Facsimile)

Clerk of the Court