UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIEQUON AUNDRAY COX, | No. 07-99010 |
| Petitioner - Appellant, | D.C. No. CV-92-03370-CBM |
| v. | |
| ROBERT L. AYERS, California State Prison at San Quentin, | ORDER |
| Respondent - Appellee. | |

Before: PREGERSON, GRABER, and WARDLAW, Circuit Judges.

The memorandum disposition filed July 22, 2010, is replaced by the

amended memorandum disposition and dissent filed concurrently with this order.

With these amendments, Judges Graber and Wardlaw have voted to deny the

petition for rehearing and petition for rehearing en banc, and Judge Pregerson has

voted to grant the petitions.

The full court has been advised of the petition for rehearing en banc, and no

judge of the court has requested a vote on it.

The petition for rehearing and petition for rehearing en banc are DENIED.

No further petitions for rehearing or petitions for rehearing en banc will be

entertained.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 09 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TIEQUON AUNDRAY COX,<br><br>    Petitioner - Appellant,<br><br>  v.<br><br>ROBERT L. AYERS, California State Prison at San Quentin,<br><br>    Respondent - Appellee. | No. 07-99010<br><br>D.C. No. CV-92-03370-CBM<br><br>AMENDED MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted February 5, 2009
Pasadena, California

Before:  PREGERSON, GRABER, and WARDLAW, Circuit Judges.

Petitioner Tiequon Aundray Cox, a California state prisoner, appeals the

district court's denial of his habeas corpus petition, filed under 28 U.S.C. § 2254,

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

challenging his conviction and death sentence for the murders of four victims.[1]

Because Petitioner filed his original habeas petition in the district court before the

effective date of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), the provisions of AEDPA do not apply. Alcala v. Woodford, 334

F.3d 862, 868 (9th Cir. 2003). We review de novo the district court's denial of this

petition for writ of habeas corpus, McNeil v. Middleton, 344 F.3d 988, 994 (9th

Cir. 2003), rev'd on other grounds, 541 U.S. 433 (2004) (per curiam), and we

affirm.

    1. Assuming, without deciding, that Petitioner's counsel provided

ineffective assistance of counsel during the trial's guilt phase, we hold that

Petitioner did not suffer prejudice. See Strickland v. Washington, 466 U.S. 668,

694 (1984) (holding that, to establish prejudice, "[t]he defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different," and defining "reasonable

probability" to mean "a probability sufficient to undermine confidence in the

outcome").

---

[1]We issued a certificate of appealability with regard to three issues
previously uncertified by the district court. This memorandum disposition
concerns those three issues only; we have addressed Petitioner's other issues in an
amended opinion. Cox v. Ayers, 613 F.3d 883 (9th Cir. 2010).

Petitioner argues that his counsel provided constitutionally deficient assistance by failing to investigate and present evidence that Petitioner did not shoot the victims and that he did not intend the victims' deaths. The Petitioner contends that if counsel had presented that evidence, the jury might have convicted Petitioner as an aider and abettor of the murders, but not as the actual murderer. If the jury had determined that Petitioner did not commit the murders, it might have found that he did not intend for anyone to die. If the jury had found that Petitioner did not have the specific intent to kill, the multiple-murder special circumstance would not have applied. And, if the multiple-murder special circumstance had not applied, the jury could not have imposed the death penalty.

For us to conclude that Petitioner suffered prejudice, we would have to conclude that at least one reasonable juror could have found (1) that Petitioner aided and abetted, but did not commit, the murders; and (2) that Petitioner did not intend to kill anyone. This we cannot do because the overwhelming weight of the evidence proved otherwise. Four witnesses testified that Petitioner either entered or exited the crime scene carrying the murder weapon. Petitioner's palm print was found on a trunk in the bedroom where three of the victims were killed. Ballistics testing established that the empty shell casings and spent bullets from the vicinity of each victim came from the same semiautomatic .30-caliber carbine that

3

Petitioner gave a witness to destroy.  We hold that no reasonable juror, faced with such overwhelming evidence, could have concluded either that Petitioner did not shoot anyone or that he did not intend for anyone to die.

Because overwhelming evidence established that Petitioner intentionally committed the murders, he cannot show that his counsel's failure simply to argue otherwise creates a reasonable probability that, but for that error, the result of his trial would have been different.  Strickland, 466 U.S. at 687.  Because the evidence conclusively demonstrates that Petitioner's ineffective assistance claim could not succeed, he is not entitled to an evidentiary hearing on the matter.  See, e.g., United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004) ("To demonstrate that the district court erred in not granting an evidentiary hearing . . . the petition, files and record of the case cannot conclusively show that he is entitled to no relief.").

2.  Generally, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure" or if the defendant's presence "has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge."  Kentucky v. Stincer, 482 U.S. 730, 745, 754 (1987) (internal quotation marks omitted).  But, due process does not require the defendant to be present "when presence would be useless, or the benefit but a shadow."  Snyder v.

4

Massachusetts, 291 U.S. 97, 106-07 (1934), <u>overruled in part on other grounds by</u>

<u>Molloy v. Hogan</u>, 378 U.S. 1 (1964); <u>United States v. Veatch</u>, 674 F.2d 1217, 1225

(9th Cir. 1981).

The trial court did not violate Petitioner's right to be present when it

excluded him from a side-bar conference about counsel's decision not to present a

closing argument during the guilt phase. This particular bench conference was not

a "critical" stage in the trial. <u>See</u> <u>Hovey v. Ayers</u>, 458 F.3d 892 (9th Cir. 2006)

(holding that a hearing on defense counsel's competency was not a "critical" stage

of trial). Further, the record shows that Petitioner was present in court during

discussions about his right to present a defense, that he was aware of his counsel's

decisions and actions and had the opportunity to object in court, and that he never

objected to his counsel's decisions, actions, or assertion on the record that there

was no conflict between counsel and Petitioner about their defense strategy. Under

these circumstances, Petitioner had no right to be present at the side-bar conference

for the purpose of objecting to counsel's strategic decision. <u>See</u> <u>Florida v. Nixon</u>,

543 U.S. 175, 192 (2004) (holding that defendant need not explicitly consent to

counsel's strategic decision to concede guilt and focus on penalty phase).

As for Petitioner's claim that the trial court violated his right to be present

by holding its hearing on the use of physical restraints in Petitioner's absence, any

5

such error was harmless. A violation of a criminal defendant's right to be present is subject to harmless-error analysis. See United States v. Marks, 530 F.3d 799 (9th Cir. 2008); Rice v. Wood, 77 F.3d 1138 (9th Cir. 1996). An error will be deemed harmless unless it has a "substantial and injurious effect or influence in determining the jury's verdict." Rice, 77 F.3d at 1144 (internal quotation marks omitted). We have previously determined that Petitioner's appearance in shackles caused him no prejudice due to the overwhelming weight of the evidence against him. Cox v. Ayers, 613 F.3d 883, 891 (9th Cir. 2010) (holding that "the evidence against Petitioner was so overwhelming that the marginal bias created by the shackles had no prejudicial effect" on the guilty verdict or the sentence (internal quotation marks omitted)). Even if the trial court violated Petitioner's due process right when deciding to shackle Petitioner, any such error in the procedure leading to shackling was, similarly, harmless beyond a reasonable doubt.

3. Petitioner was not prejudiced by instances of jury misconduct. Petitioner argues that his constitutional rights were violated as a result of the following instances of jury misconduct: (1) some jurors knew that co-defendant Horace Burns was convicted and received a life sentence; (2) even though it was not admitted at trial, some jurors knew about and discussed Burns's letter to Petitioner, in which Burns asked Petitioner to take the fall for everyone else and offered to

6

make sure that no witnesses would testify against him; and (3) the spectators'

outbursts and comments were perceived by jurors.

On habeas review of a claim that jurors were exposed to extrajudicial

evidence before rendering a verdict, the petitioner bears the burden of establishing

the extrinsic material "had a substantial and injurious effect" on the jury's verdict.

Fields v. Brown, 503 F.3d 755, 776 (9th Cir. 2007) (en banc).  We have identified

the following factors that are particularly relevant to the inquiry:

> "(1) whether the material was actually received, and if so, how; (2) the
> length of time it was available to the jury; (3) the extent to which the
> juror discussed and considered it; (4) whether the material was
> introduced before a verdict was reached, and if so at what point in the
> deliberations; and (5) any other matters which may bear on the issue
> of the reasonable possibility of whether the extrinsic material affected
> the verdict."

Sassounian v. Roe, 230 F.3d 1097, 1109 (9th Cir. 2000) (quoting Dickson v.

Sullivan, 849 F.2d 403, 406 (9th Cir. 1988)).  We have also identified several

factors diminishing the potential prejudice of extrinsic evidence:

> "(1) whether the prejudicial statement was ambiguously phrased; (2)
> whether the extraneous information was otherwise admissible or
> merely cumulative of other evidence adduced at trial; (3) whether a
> curative instruction was given or some other step taken to ameliorate
> the prejudice; (4) the trial context; and (5) whether the statement was
> insufficiently prejudicial given the issues and evidence in the case."

Id. (quoting Jeffries v. Wood, 114 F.3d 1484, 1491-92 (9th Cir. 1997)).

7

Petitioner was not prejudiced by some jurors' knowledge of Burns' conviction and life sentence. Only one juror declared that there was a discussion about Burns' life sentence during their deliberations; none of the other juror declarations, which were similarly drafted by habeas counsel, contained such a statement. Further, in light of the overwhelming evidence against Petitioner and the despicable nature of the crimes, as well as the trial court's instructions requiring the jury to rest its findings only on the evidence presented at trial, the district court properly held that Petitioner was not prejudiced by the alleged jury misconduct.

Petitioner also was not prejudiced by the jury's knowledge of a letter written by Burns to Petitioner that was not admitted at trial. Petitioner failed to establish that the letter was discussed during jury deliberations or that the jurors were exposed to information about the letter during Petitioner's trial. Only three jurors mentioned the letter in their declarations, and none of them knew the actual content of the letter. None of the jurors stated with certainty that the letter was discussed during deliberations. Under these circumstances, Petitioner cannot show prejudice.

Lastly, Petitioner was not prejudiced by improper spectator conduct in the presence of the jury. Prejudice will be limited if a "curative instruction was given or some other step taken to ameliorate the prejudice." Sassounian, 230 F.3d at

8

1109 (internal quotation marks omitted); see also Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir. 2007) ("The trial court properly instructed the jury to disregard any extraneous comments and to decide the case based only on the evidence at trial; juries are presumed to follow the court's instructions."). Here, the trial court instructed the jury not to discuss the case among themselves or with anyone else, and not to allow anyone to address them about the case. The trial court, in the jury's presence, admonished the spectators "to watch their conversations and behavior in the hallways when you see any juror whether in this case or any other case, approach you, so that we don't have a problem." When a spectator made an inappropriate outburst in the courtroom, the court immediately told the jury to "disregard the outburst of the spectator and . . . not to consider it for any purpose whatsoever." Further, the evidence supporting Petitioner's convictions and death sentence was overwhelming. In light of these circumstances, Petitioner was not prejudiced by the spectator's conduct.

AFFIRMED.

Cox v. Ayers, No. 07-99010

Pregerson, J., dissenting:

I respectfully dissent.  I believe Cox has made out a colorable claim that his attorneys were constitutionally ineffective when they failed to mount any defense against the special circumstance allegation.  Accordingly, I would remand to the district court for an evidentiary hearing limited to this issue.

## DISCUSSION

Cox alleges that his attorneys did not understand that a plausible defense could be mounted against the special circumstance allegation.  Cox's attorneys could have argued that (1) co-defendant Williams was the actual shooter, and (2) Cox lacked the specific intent to aid Williams in committing first-degree murder.  Cox points out that, had his attorneys prevailed on this theory, Cox would have been convicted of four counts of first degree murder as an aider and abettor but would have been ineligible for the death penalty.  See Cal. Penal Code § 190.4(a); People v. Williams, 941 P.2d 752, 786-787 (Cal. 1997).  Cox cites excerpts of his trial attorneys' testimony that lend support to his allegation that his attorneys did not consider addressing the special circumstance allegation.

To receive an evidentiary hearing, a habeas petitioner need only make out a "colorable claim" for relief.  Earp v. Ornoski, 431 F.3d 1158, 1169 (9th Cir. 2005).

This lesser "colorable claim" standard does not require a habeas petitioner to "conclusively establish . . . that counsel was prejudicially deficient." Id. at 1173. Rather, the habeas petitioner must "allege specific facts which, if true, would entitle him to relief." Id. at 1167 n.4 (internal quotation marks and citation omitted).

To make out a colorable claim of ineffective assistance, Cox must allege facts that, if true, would demonstrate that (1) counsel's performance "fell below an objective standard of reasonableness" (the "performance prong"); and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice prong"). Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

## I. Performance Prong

Cox has made out a colorable claim under Strickland's performance prong for two reasons.

First, this is not a case concerning some minor disagreement about what a defense attorney could have done during the guilt phase. Rather, this is a case where defense counsel *did not put on a defense at all*. Defense counsel called no witnesses and gave no opening or closing statement. In this context, Cox's attorneys' failure to raise *any* defense to the special circumstance allegation is

2

prima facie evidence of deficient performance. Absent some indication that counsel evaluated the special circumstance's intent requirement and made a strategic decision to forgo a defense, counsel's wholesale failure to mount a defense constitutes deficient performance.

Second, Cox's claim is not limited to the indisputable fact that his attorneys did nothing to defend against the special circumstance allegation. Cox has alleged that his attorneys' failure to raise a defense to the special circumstance allegation was due to their misunderstanding of the law—that his attorneys did not understand the special circumstance's intent requirement. If this allegation is true, it would mean that Cox's attorneys were clearly deficient. See Lankford v. Arave, 468 F.3d 578, 584 (9th Cir. 2006) (holding that attorney performed deficiently because his decision was based on a misunderstanding of the law); United States v. Span, 75 F.3d 1383, 1390 (9th Cir. 1996) (same).

Moreover, there is a legitimate factual dispute as to whether Cox's attorneys misunderstood the law. Cox has pointed to excerpts of the trial attorneys' depositions that lend credence to his allegation. Ordinarily, factual disputes are resolved by the district court. Here, however, the district court did not address Cox's argument that his attorneys misunderstood the law and never referred to the excerpts of deposition testimony that support his allegation. For us to determine

3

this issue, in the absence of factual findings, would be premature. Our inquiry at this stage is to determine whether Cox has "allege[d] specific facts which, if true, would entitle him to relief." Earp, 431 F.3d at 1167 n.4 (internal quotation marks and citation omitted). It is not our job to determine whether Cox's attorneys actually misunderstood the law or made a sound strategic decision.

In sum, Cox has made out a colorable claim that his attorneys performed deficiently when they failed to raise any defense to the special circumstance allegation.

## II. Prejudice Prong

When compared with other ineffective assistance cases, the prejudice inquiry in this case is unique. We are called upon to address the impact of *mounting no defense at all*. Because there was a plausible defense to the special circumstance allegation, counsel's failure to raise it (or any other defense) prejudiced Cox.

Counsel's failure to give *any* closing argument sent an implied message to the jury that the prosecution had proved the special circumstance allegation beyond a reasonable doubt. After the prosecution presented an emotional closing argument, Cox's attorney responded by uttering one word: "Submit[ted]." It is difficult to imagine how the jury could interpret counsel's silence as anything other

than an admission by the defense that the prosecution had proved the special circumstance allegation beyond a reasonable doubt.

Cox's attorneys could have argued during the guilt phase that Williams was responsible for the murders and that Cox lacked the intent to kill. The two surviving victims provided a description of the shooter that matched Williams and not Cox. This, coupled with evidence that Williams orchestrated the killings, presented a compelling defense to the special circumstance allegation. Had defense counsel given a closing argument that described this evidence, it is reasonably probable that at least one juror would have had a reasonable doubt about the shooter's identity and whether Cox specifically intended that the victims be killed.

The majority mistakenly applies a more onerous standard for prejudice than the standard articulated in Strickland and its progeny. The majority contends that Cox must show "that at least one reasonable juror could have found (1) that [Cox] aided and abetted, but did not commit, the murders; and (2) that [Cox] did not intend to kill anyone." Majority Op. at 4. But the burden was on the prosecution to prove *beyond a reasonable doubt* that Cox (1) was the actual shooter, or (2) acted with the specific intent to aid and abet co-Defendant Williams in committing first-degree murder. See Cal. Penal Code § 190.4(a); Williams, 941 P.2d at 786-

5

787. Had one juror had a *reasonable doubt* about the identity of the shooter and Cox's intent, Cox would have been ineligible for the death penalty. Id. Thus, the relevant inquiry here is whether there is a "reasonable probability" that, but for defense counsel's errors, at least one juror would have had "a reasonable doubt." Duncan v. Ornoski, 528 F.3d 1222, 1247 (9th Cir. 2008).

The evidence the majority points to—the palm print and the witnesses who saw Cox carrying the murder weapon—does not preclude a finding of prejudice. There was evidence supporting the prosecution's theory that Cox was the actual shooter. But there was also evidence supporting the theory that Williams was the actual shooter and that Cox lacked the specific intent to kill. The jury was deprived of the opportunity to decide between these two theories because defense counsel failed to present a defense to the special circumstance allegation.

In sum, it is not necessary for Cox "to show that counsel's deficient conduct more likely than not" altered the special circumstance verdict. Duncan, 528 F.3d at 1239 (internal citations omitted). He need only show a "reasonable probability" that, but for defense counsel's errors, *one* juror would have had a reasonable doubt. Id. at 1247. Cox has met this burden.

**CONCLUSION**

6

Because Cox has made out a colorable claim for relief, I would remand to the district court for an evidentiary hearing on Cox's claim that his attorneys were constitutionally ineffective when they failed to mount any defense against the special circumstance allegation. Because the majority declines to remand for such a hearing, I respectfully dissent.